[Cite as *In re B.B.*, 2013-Ohio-1958.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 12 BE 18 |
| | ) | |
| B.B. | ) | |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:  Civil Appeal from the Court of Common
Pleas, Juvenile Division, of Belmont
County, Ohio
Case No. 11 JA 429

JUDGMENT:  Sentence Vacated.
Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellee:  Atty. Christopher Berhalter
Belmont County Prosecutor
Atty. Scott A. Lloyd
Assistant Prosecuting Attorney
147-A West Main Street
St. Clairsville, Ohio  43950

For Defendant-Appellant:  Atty. Timothy Young
Ohio Public Defender
Atty. Charlyn Bohland
Assistant State Public Defender
Office of the Ohio Public Defender
The Midland Building
250 East Broad Street, Suite 1400
Columbus, Ohio  43215

JUDGES:
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  May 6, 2013

WAITE, J.

{¶1}    Appellant, a minor child, B.B., raped an acquaintance who was a friend of his sister's in April of 2011 in Belmont County, Ohio. The rape was reported, Appellant was interviewed by the police and subsequently charged. At arraignment in June of 2011, Appellant entered a plea of not guilty. Appellant was initially held in the juvenile detention center and later released with radio monitoring during the school year. After failing a polygraph exam in January of 2012, Appellant changed his plea to guilty the following month. At the plea hearing the trial court questioned Appellant as to the voluntary nature of his plea, but did not ascertain on the record his understanding of the changes against him or the consequences of his plea. The court also did not inform Appellant or verify his understanding of the constitutional rights he would forgo by entering a plea in lieu of trial. Due to these omissions, the record does not, by law, allow us to conclude that Appellant's plea was knowingly and voluntarily entered. The trial court's acceptance of Appellant's plea is reversed, his sentence vacated, and the matter remanded for a new plea hearing.

Factual and Procedural History

{¶2}    Appellant, B.B., was arraigned on June 27, 2011 as an alleged delinquent child who had committed one violation of R.C. 2907.02, the rape of a female acquaintance who was then fifteen. According to the criminal complaint, Appellant arranged to be alone with the victim, who he took into the woods and sexually assaulted. The victim had agreed to "hang out" with Appellant, who was older than she, because of her friendship with both his younger sister and his girlfriend. When the victim refused Appellant's advances and reminded him that she

was a friend of his girlfriend, he knocked her down and got on top of her. She struggled to get up and he pushed her down again. He took her cell phone from her and told her she would be in trouble if she did not stay where she was. She struggled to prevent him from removing her pants but he overcame her, and pinned her hands behind her head. He forced her to touch his genitals and forced digital and penile penetration of the victim's vaginal area and penile penetration of her anal cavity. At this point, the victim was able to break away from him and fled. Appellant followed her, apologizing and asking why she was crying. He continued to try to contact her by text and phone and subsequently asked if she told anyone what had happened. According to the victim, she never had a romantic relationship of any kind with Appellant. The victim refused Appellant's attempts to contact her after the incident. She told friends what had happened, and the mother of a friend contacted her mother, who took the victim to the hospital for an examination during which the police were contacted. The victim turned her cell phone over to the police so that text messages could be recovered.

{¶3} Investigating officers contacted Appellant's probation officer, who indicated that Appellant would cooperate with the investigation. Appellant was interviewed by the investigating officer on April 28, 2011. According to Appellant during that interview, he and the victim had consensual sex. He did not attempt anal penetration, did not use a condom, but also did not complete the act. Appellant told the officer during the initial interview that he stopped the allegedly consensual intercourse because he was disturbed by the expression of pain or fear on the

victim's face and was not sure if she had previously engaged in intercourse. Appellant did not describe a romantic relationship with the victim, agreed that this was the only encounter between them, but maintained that it was mutual and that the victim had suggested going into the woods. Appellant alleged that the victim was only upset because she was concerned that her boyfriend would find out what had happened. Appellant admitted that the victim was crying, but claimed that her crying began only after she told him that she had a boyfriend. He told the officer that the victim had only reported the incident because her boyfriend found out. Appellant said he accompanied the victim to a laundromat afterwards, that she told him she was fine and hugged him when she left that day. Based on Appellant's story to police, he pleaded not guilty at his arraignment and counsel was appointed.

{¶4} Although Appellant agreed to take a polygraph exam during the initial interview, the test did not occur until January 5, 2012. According to the polygraph assessment, Appellant was untruthful during the exam when he denied forcible sexual contact and intercourse with the victim. After the polygraph exam was administered but before the written report was prepared, the trial court set a date for final pre-trial and trial. At the final pre-trial, Appellant changed his plea to guilty. The trial court scheduled a sentencing hearing and made arrangements with counsel to receive statements from the victim, the victim's family, and a counselor who had examined Appellant to determine his suitability for a diversion program. The court ordered reports from Appellant's probation officer, juvenile detention, school, and his

polygraph assessment. Prior to sentencing, Appellant, who had been allowed house arrest with limited release during the school year, was returned to juvenile detention.

**{¶5}** The sentencing hearing was held on March 13, 2012. The court indicated that it had reviewed a variety of material including victim impact statements and recommendations from the various entities who had evaluated or had contact with Appellant. The court also referred to Appellant's several prior juvenile violations and explicitly mentioned that it was considering the purposes of juvenile sentencing. The court sentenced Appellant to a sentence of one-year minimum to maximum incarceration until age 21 with the Department of Youth Services and noted that the department had a sex offender specific program. Appellant filed a timely notice of appeal from the trial court's March 13, 2012 entry of sentence.

### Assignment of Error

The Belmont County Juvenile Court erred when it accepted [Appellant's] admission because the admission was not knowing, voluntary, and intelligent. Fifth and Fourteenth Amendments to the United States Constitution; Ohio Constitution, Article I, Sections 10 and 16; Juv. R. 29(D). (2/14/2012 T.pp.45-46).

**{¶6}** Appellant challenges the sufficiency of the trial court's inquiry into his understanding of his plea, the offense, and the rights he was forgoing by entering a plea prior to accepting his change of plea. In a juvenile proceeding, Juv.R. 29(D) charges the court to make a direct inquiry and inform the offender of specific rights prior to accepting or denying the entry of an admission. The rule provides:

> **Initial procedure upon entry of an admission.** The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
>
> (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
>
> (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
>
> The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.

"The best method for the trial court to comply with Juv.R. 29(D) is to use the language of the rule itself" and stop "after each right and [ask] whether the child understands the right and knows that he is waiving it by entering an admission." *In re Graham*, 147 Ohio App.3d 452, 2002-Ohio-2407, ¶11.

{¶7} Although strict compliance with the statute is preferred, the Ohio Supreme Court has allowed "substantial compliance" to satisfy the requirements of Juv.R. 29(D) as to determining the voluntary nature of the admission, the understanding of the charge, and the consequences of the admission. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶13. To demonstrate

substantive compliance, the record must demonstrate that the "juvenile subjectively understood the implications of his plea." *Id.* With regard to Juv.R. 29(D)(2), which addresses the constitutional due process rights forgone by entering a plea in lieu of trial, courts have required strict compliance. *In re A.E.*, 5th Dist. Nos. 10-CA-107, 10-CA-108, 2011-Ohio-4746, ¶20; also *In re Onion*, 120 Ohio App.3d 498, 715 N.E.2d 604 (1998) (Although under *In re C.S.*, substantial compliance may also suffice). For violations of Juv.R. 29(D)(2) as applicable, the remedy is reversal to allow a juvenile to reenter a plea. The record in this instance does not demonstrate necessary compliance with this rule.

**{¶8}** Appellant argues that the thirteen line exchange between him and the court, ending with the court's acceptance of Appellant's change of plea to guilty, was insufficient to establish either substantial compliance with (D)(1) or strict compliance with (D)(2) of Juv.R. 29. The state concedes that during the plea hearing in the court's colloquy the court did not address Appellant's understanding of the charge or of the legal implications of a guilty plea. The state contends, however, that the information provided to Appellant by the court during his arraignment in 2011 should satisfy the requirements of his plea hearing in 2012.

**{¶9}** The state's argument in this regard, however, violates both the letter and spirit of the law. The purpose of Juv.R. 29(D) is to ensure that any decision by the accused to forgo his or her constitutional right to a trial, representation, to confront accusers, call witnesses, and to be unanimously found guilty beyond a reasonable doubt is made freely, with actual understanding of both the nature of the

charges the juvenile is facing and knowledge of the full extent of penalties that could be levied as a result of the plea.

**{¶10}** To establish the validity of the plea the record must reflect that when the plea is entered, the decision was voluntary and made with actual understanding of the allegations, rights, and consequences of the plea. Whether Appellant was given this information and/or may have some understanding of any aspect of these elements at any other point in the proceeding is wholly irrelevant to a determination that, at the time a plea was accepted, it was entered validly.

**{¶11}** An explanation of the charges during the arraignment in no way satisfies the requirements of Juv.R. 29. Practically speaking, the charges as described in the criminal complaint may be altered at various times prior to trial. Alternatively, the plea may be made to only one of multiple charges. The record of the hearing at the time a guilty plea is entered in every case must contain all necessary information concerning the actual charges to which the juvenile is pleading guilty and the consequences of the plea. The juvenile rules are clear that it is the responsibility of the court to directly engage the accused and conduct the necessary inquiry before accepting or rejecting the plea. Juv.R. 29(D). The rule specifies what knowledge the court must ascertain, and specifically allows the court to consider testimony, review documents, and make further inquiry, if necessary, to determine whether a plea is appropriate. Juv.R. 29(D). While a reviewing court considers the totality of the circumstances to determine whether the record reflects valid waiver, *In re C.S., supra*, paragraph 6 of the syllabus, the only relevant circumstances on

review are the circumstances immediately preceding and during the court's acceptance of the plea, not information provided to the juvenile weeks or months prior.

{¶12} The record in this instance does not reflect inquiry into Appellant's understanding of the charges, the results of a guilty plea, and the rights he was forgoing by making his plea. The only relevant portion of the record as to this issue is the February 14, 2012 pre-trial when the plea was entered and accepted. At that time, defense counsel informed the court that Appellant intended to change his plea to "enter an admission to the charge, the F1 charge contained in the Complaint." (Tr., p. 45.) The trial court confirmed with counsel that Appellant was "entering an admission to, that charge" and then engaged Appellant in the following exchange:

> THE COURT: [B.B.], you heard your attorney indicate that you are admitting to the charge that's been filed against you in the Complaint. Is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you doing so of your own free will?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you been promised anything?
>
> THE DEFENDANT: No, sir.

THE COURT: Have you been threatened in any way to enter that type of plea?

THE DEFENDANT: No, sir.

THE COURT: Are you doing so freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: The Court will accept your plea and adjudicate you a delinquent child on the charge as filed in the Complaint.

(Tr., pp. 45-46.) After accepting the plea, no further pertinent discussion occurred. The record reflects, instead, preparations for sentencing and Appellant's return to custody prior to sentencing. The transcript reflects no discussion was had regarding possible sentences as a consequence of the plea, the substance of the offense identified in the complaint, or Appellant's right to challenge the witnesses and evidence, testify or remain silent, and present evidence in his defense.

{¶13} The absence of the necessary inquiry and disclosures fails to meet the substantial compliance standard with regard to Juv.R. 29(D)(1). Further, the absence of any discussion of constitutional rights in no way satisfies (D)(2) of that rule. We cannot conclude from this record that Appellant's plea was knowingly entered with an understanding of the implications of the plea, the charges against him, and the rights he would forgo. Hence, the trial court's acceptance of Appellant's plea is reversed and the matter is remanded so that the juvenile may again enter a plea in this matter.

Conclusion

**{¶14}** The trial court did not conduct the inquiry and provide the information required by Juv.R. 29(D) at the time the juvenile entered his guilty plea. Appellant's plea is invalid as a result of these omissions. The trial court's acceptance of Appellant's plea is reversed, his sentence vacated, and the matter is remanded for a new plea hearing.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.